**IN THE COURT OF APPEALS OF IOWA**

No. 25-0144
Filed June 18, 2025

**IN THE INTEREST OF J.B.,**
**Minor Child,**

**J.B., Father,**
        Appellant.
_____

Appeal from the Iowa District Court for Polk County, Susan Cox, Judge.


A father appeals the dispositional order in a child-in-need-of-assistance proceeding. **AFFIRMED.**


Clara R. Avenarius of Branstad & Olson Law Office, Des Moines, for appellant father.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

Nicole Garbis Nolan of Youth Law Center, Des Moines, attorney and guardian ad litem for minor child.


Considered without oral argument by Tabor, C.J., and Ahlers and Langholz, JJ.

**TABOR, Chief Judge.**

A father, James, appeals the dispositional order in this child-in-need-of-assistance (CINA) proceeding involving his two-year-old son. At the disposition hearing, James's counsel asserted that the guardian ad litem (GAL) report failed to satisfy Iowa Code section 232.2(25) (2024). On appeal, James advances three arguments. (1) In chapter 232 proceedings, putative fathers have standing to make requests, specifically relating to GAL reports. (2) The GAL report was incomplete and counsel's criticisms of that report were not "personal attacks." And (3) GAL reports should be treated as evidence in CINA proceedings. In the State's view, because James established paternity and is no longer a putative father, that issue is moot. As for the father's other arguments, the State contends they are not reasons to upend the dispositional order.

Finding no reversible error, we affirm.[1]

I.     **Facts and Prior Proceedings**

In mid-2024, the juvenile court removed J.B. from his mother because she was using drugs and lacked stable housing. The mother lost her parental rights to two other children, and a third child was in a guardianship. She entered residential substance-use treatment with a safety plan that allowed J.B. to remain with her. But she did not complete that treatment, and the Iowa Department of Health and Human Services placed J.B. in foster care in July. That first placement ended in October, and J.B. was moved to a foster home in Cedar Rapids to be closer to his

---

[1] "We review child-in-need-of-assistance proceedings de novo." *In re V.G.*, 995 N.W.2d 530, 536 (Iowa Ct. App. 2023). We give weight to the juvenile court's fact findings but are not bound by them. *Id.* "The most important consideration is the best interests of the child." *Id.*

mother as she entered another residential treatment center.  He was doing well in that placement at the time of the disposition hearing.

The mother identified James as J.B.'s father in July 2024, and the juvenile court ordered paternity testing that month.  The court also appointed James an attorney.  But testing was delayed because James is serving a 300-month sentence at a federal prison in Illinois for drug trafficking.  His release date is 2043.  He has never had any contact with J.B.  Still, as a putative father, James attended hearings virtually and had his interests represented by his attorney.

Critical to this appeal is the GAL appointed for J.B.  Her report for the October disposition hearing stated that she last visited J.B. in August, before the September adjudication.  It also noted that J.B. had been moved to a new foster home before "a visit for [the disposition] hearing being able to occur" and stated that "[a] visit with [J.B.] will occur . . . at his new home in Cedar Rapids . . . in the near future[.]"  The GAL joined the department's recommendation that J.B. remain out of the mother's custody but with more visits and less supervision to transition him home.

Also at that hearing, James's counsel argued:

> In terms of the GAL report, the Code sets out requirements for GAL actions and reports in Iowa Code [section] 232.2(25). . . .
> . . . .
> This is something that was recently addressed by the court of appeals in a case that the GAL and I were both involved in, stating that the court should not rely on GAL reports when they are deficient. . . .
> I know that the GAL and I have differing opinions on this issue of whether her reports in general and the one just filed here conform to statutory requirements; we would just ask that the Court note in its ruling whether it's relying on the GAL report and if the Court finds that the report complies with Iowa Code 232.2(25).

The GAL responded:

> Your Honor, I just want to be clear that I do not consider my GAL report to be evidence before the Court.
>
> So it's—we consider our GAL reports to be pleadings, and so I certainly wouldn't assume that the Court is relying on what I write in my report as evidence before the Court.
>
> . . . [Father's counsel] has made a course of practice of attacking me personally, so I'm not surprised . . . by her statements before the Court today.

The court ended discussion on that topic, and no other record was made about the GAL report.

The court entered its disposition order in late October 2024. It continued J.B.'s removal from the mother. And it authorized the department to send James photographs of J.B. but deferred requested video visits until paternity was established.

Next, the court addressed the GAL report, treating statements by James's counsel as a motion that the report was "insufficient." The court denied that motion, giving four reasons. First, the father waived the claim by agreeing that the court could consider every report and exhibit in the record. Second, as a putative father, he lacked standing under Iowa Code section 232.89 to make the motion. Third, the GAL report "is not evidence," and the court "did not rely upon it as evidence[] in deciding the disposition." And fourth, the report met the statutory requirements "with specific information [regarding] private medical details and testing." As a final point, the court was "concerned [regarding] the attorney's demeanor and tone in making this verbal motion. It appeared to be more of a personal attack[] than raising a legitimate legal issue. . . . The court requests this not continue." James

asked the court to reconsider, enlarge, and amend its order, but the court denied that motion, giving no further reasons.

In January 2025, the department reported that paternity testing confirmed James is J.B.'s father.

James appeals the disposition order.

## II.    Discussion

On appeal, James contends that, as a putative father, he "has standing both to make specific requests relating to GAL Reports, and to make other requests to the court." He urges that, even if that argument is moot because he established paternity, we should address it under the public-importance exception to the mootness doctrine. He also seeks declarations that GAL reports are evidence; the GAL report filed in preparation for the disposition hearing did not comply with section 232.2(25); and counsel's statements about the report were not a "personal attack." The State counters that the father's contentions do not pinpoint an error that has a remedy on appeal. We agree.

First, we need not address whether, as a putative father, James had standing to challenge the GAL report because the court heard and addressed his objections to the report. James asked the court to "note in its ruling whether it's relying on the GAL report and if the court finds that the report complies with Iowa Code [section] 232.2(25)."[2] The court did both: it stated that it "did not rely upon

---

[2] Our court recently discussed the expanded GAL duties:

> The statute directs the GAL to submit a written report for each court hearing. The report is to detail compliance with the GAL's information-gathering duties in section 232.2(25)(b), paragraphs (1) through (5). Those duties include conducting interviews, making

the report as evidence in deciding the disposition." And it found that the report met statutory requirements. The court did not deny James the opportunity to be heard based on a lack of standing.[3]

Second, we do not reach James's concerns about the adequacy of the GAL report or whether GAL reports are evidence rather than pleadings in CINA cases. In bypassing these issues, we do not fault the father's counsel for challenging the GAL report. We have strongly urged attorneys to comply with the directives in section 232.25(b) "to ensure that the best interests of Iowa children are served." *In re Z.H.*, No. 24-1225, 2024 WL 4370058, at *3 (Iowa Ct. App. Oct. 2, 2024). But here, the GAL report did not factor into the court's disposition decision. *Compare A.D.*, 2024 WL 2045988, at *6–7 (reversing termination of parental rights, in part, because juvenile court relied on GAL's barebones and untimely report and recommendation supporting termination), *with In re T.R.*, No. 24-0914, 2024 WL 4502231, at *7 (Iowa Ct. App. Oct. 16, 2024) (distinguishing *A.D.* and declining to reverse because juvenile court did not rely on the GAL's recommendation and court's findings were supported by evidence in the record).[4]

---

home visits, attending hearings, and conducting fact-finding to enable the GAL to represent the child's best interests.

*In re A.D.*, No. 24-0232, 2024 WL 2045988, at *7 (Iowa Ct. App. May 8, 2024) (cleaned up).

[3] In his motion to reconsider, enlarge, and amend, James argued the report was deficient and provided examples of missing information. The juvenile court summarily rejected that motion. James reprises his claims of alleged deficiencies in the GAL report here.

[4] The takeaway from this line of cases is not for juvenile courts to disavow reliance on GAL reports, but for GALs to strive to comply with the statutory requirements for representing the best interests of children who are adjudicated in need of assistance.

Finally, we find no reversible error in the court's observation that James's attorney lodged a "personal attack" on the GAL. "Attorney arguments are not evidence." *Malott v. Bevard Props., L.C.*, No. 19-0381, 2020 WL 4200834, at *4 n.3 (Iowa Ct. App. July 22, 2020). The attorney's demeanor and tone are irrelevant to the substantive issues in the CINA proceeding. At the same time, courtroom management is subject to the juvenile court's discretion; we respect its observations. *See generally State v. Carey*, No. 12-0230, 2014 WL 3928873, at *9 (Iowa Ct. App. Aug. 13, 2014) (addressing disruptive defendant). In any case, the court's characterization of the attorney's statements had no effect on James's substantial rights. We take no position on anyone's civility or professionalism here but also find no harm in the juvenile court's request that the parties focus on the legal issues.[5]

**AFFIRMED.**

---

[5] Even in our de novo review, we have no means to evaluate the demeanor of the parties during the hearing. Before the case was transferred to our court, James asked the juvenile court and the supreme court to "correct and modify the record" by including the audio recording of the disposition hearing. Both courts denied those motions.